IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | MDL DOCKET NO. MDL 875 |
| THIS DOCUMENT RELATES TO: Cases listed on attached Exhibit A | |

**Plaintiffs' Combined Motion and Memorandum to Reconsider Order Entered 12-20-2011**

Plaintiffs and Dr. Henry Anderson move to reconsider to the order entered on December 20, 2012 ("the order") relating to the production of records for b-readers and related matters.[1] (Ex. B.) In support of this motion, plaintiffs and Dr. Anderson state as follows:

**INTRODUCTION**

The order of this court requires production of thousands of b-reads and related records from nonmalignant disease cases which are now dismissed. The reintroduction of these cases into the discovery process conflicts with concerns previously expressed by all judges involved with the resolution of the Cascino Vaughan Law Offices (CVLO) MDL 875 cases. These concerns have been expressed about viability of and large volume of unimpaired and other non

---

[1] The magistrate judge's order of December 20, 2011, was the final order in a trilogy of orders. The first two orders were entered on December 9 and 13, 2011. The orders involved related motions listed in the December 13 memorandum opinion. The December 20 order determines the actual scope of the productions which are the subject of the motion to reconsider. By order filed on December 29, 2011, the magistrate judge granted plaintiffs leave until January 10, 2012, to file "a motion to reconsider" the rulings of the December 20 order.

1

malignant cases.  See *In re Asbestos Prods. Liab. Litig. (No. VI)*, MDL 875, November 14, 2011,

Memorandum at 1-2 and 19-20 (noting goal of eliminating case backlog and dismissing

unimpaired non malignant pleural cases).  In response to such concerns, CVLO has reduced the

number of nonmalignant cases from about 4,550 to 425 cases.  (Ex. C, McCoy affidavit at ¶12.[2])

The order brings the documentation from the thousands dismissed nonmalignant cases back into

play.

The order also dramatically enlarges the scope of the nonmalignant clients in this

litigation.  To determine "negative" rates, the order effectively requires production of b-reads and

related communications between the b-readers and counsel for thousands of nonmalignant clients

whose cases were never filed or were dismissed years ago.  By involving non-litigants, the order

exposes to public scrutiny medical findings about thousands of persons which are not open to

review as part of a lawsuit.

The production of the b-reads is only a starting point for any valid statistical comparison.

As the publication cited by defendants recognizes, evaluation of the positive and negative b-read

findings within a population group requires knowledge of the "exposures" of each group member

to make comparisons.  (Ex. D, Lester Brickman, *Disparities Between Asbestosis and Silicosis*

*Claims Generated by Litigation Screenings and Clinical Studies*, 29 Cardozo L. Rev. 102,  119,

.)  The testimony of Dr. Anderson establishes the need to know the exposure history of a

plaintiff to predict the likelihood of positive signs being found and reported on a b-read.  (Ex. E,

---

[2]CVLO filed about 4,950 cases in MDL 875 and had reduced this number to about 1,850 cases as of August 12, 2010, the date of the cited affidavit. Since the affidavit, the number of pending CVLO cases has been further reduced to about 826 cases.  About 401 remaining cases are malignant disease cases and 425 are non malignant.   Almost all dismissals have been nonmalignant cases.

Anderson dep at 216.)   Locating and evaluating this data for the dismissed and never filed clients will create satellite litigation which dwarfs the work on the pending cases.

Plaintiffs object to the production of the following categories of records which are apparently required under the order:

1.      B-reads, causation letters and related communications (including enclosure and cover letters) about CVLO MDL 875 cases which are dismissed;

2.      B-reads, causation letters and related communications for CVLO clients or prospective clients whose cases were never filed;

3.      B-reads and causation letters for CVLO clients with pending MDL cases that were never disclosed or relied on; and

4.      Session notes and database of Dr. Anderson for all clients.

Dr. Anderson joins in the need to reconsider production of records in his database or session notes with respect to all clients.[3]

Plaintiffs also object to the terms relating to the costs of production as set forth later.

***Objection Category 1***

Category 1 includes all dismissed MDL plaintiffs.  The basis for the objections to the order are:

•       Rule 26 protections for retained experts;

•       Rule 26 privileges for consulting experts; and

---

[3]Without waiving objections, plaintiffs will produce under seal as Rule 26 protected retained expert documents Dr. Anderson's session notes and database data for CVLO clients with pending cases, as well as "other communications" (*e.g.*, cover letters) that were withheld from plaintiffs' production pursuant to the court's December 9 and 20, 2011 orders.

- Failure to show "substantial hardship" or "exceptional circumstances" to support the need for production of the records

### *Objection Category 2*

The documents in category 2 (b-reads and causation reports of persons who never filed claims) are objected to on the following grounds:

- Rule 26 privileges for consulting experts; and

- Failure to show "substantial hardship" or "exceptional circumstances" to support the need for production of the records

### *Objection Category 3*

The documents in category 3 (b-reads and causation reports that were never disclosed or relied on) are objected to on the following grounds:

- Rule 26 privileges for consulting experts; and

- Failure to show "substantial hardship" or "exceptional circumstances" to support the need for production of the records

### *Objection Category 4*

Category 4 are the session notes and database of Dr. Anderson for pending cases, dismissed cases, and persons who never filed a case. The production of these is objected to for the following reasons:

- All reasons set forth above; and

- Rule 26 protections for draft reports and materials which are not facts, data, or assumptions considered by the expert

Plaintiffs identify all these documents as privileged or protected and will provide a log of such

materials.

## ARGUMENT

Plaintiffs and Dr. Anderson incorporate all arguments made in opposition to the production of these records asserted in connection with motions listed in the order of this court entered on December 13, 2011.  (01-md-00875, Doc. No. 8313.)  This motion and memorandum highlight errors in applying the opinion to the reach the order entered on December 20 for the actual production.

I.      Rule 26 protections

This court has recognized the privileges and protections (collectively "protections") asserted by plaintiffs and Dr. Anderson under Rule 26.  (12/13/2011 Memorandum Op., p.11-14).  The Rule 26 protections apply to the documents in categories 1 to 4 above as to non pending MDL clients.

The precedent in MDL 875 only relates to the waiver of such protections in the context of clients with pending cases.  Judge Robreno ruled in 2009 the consulting expert privilege was waived for "filed claims now included in MDL 875."  In re Asbestos Products Liability Litigation 256 F.R.D. 151, 157 (E.D.PA 2009).[4]  Judge Robreno carefully articulated how the status of a pending case implicitly resulted in a waiver of protections applicable to the medical findings and reports of experts which support the diagnosis and causal connection required to

---

[4]Other references in Judge Robreno's 2009 opinion limited production to information "at issue in the MDL" and to documents "relied on by any plaintiff in MDL 875." 151 F.R.D. at 157-58.  Judge Robreno's opinion did not deal with exceptions, if any, to protection for trial experts under the amendments to Rule 26 made two years later in 2011.

meet the standards for an MDL 875 plaintiff to proceed.  Judge Robreno held: "By bringing suit based on diagnoses of asbestosis, Plaintiffs have essentially released to the world their own medical information and waived any privilege to the privacy of that information." 256 F.R.D. at 155.  By this rationale, Judge Robreno's reasoning was limited to pending cases.

No MDL 875 judge has ruled the protections are waived as to clients without pending cases.  As written, this court's ruling stretches the boundaries to make medical findings in a b-read of any person, with or without asbestos disease, discoverable.

Given the presence of Rule 26 protections, the documents are protected from discovery. If any exception to the protections exist, defendants at a minimum must show either "substantial hardship" or "exceptional circumstances."[5]  Consideration of alternatives to discovery of protected materials is part of the analysis.  Defendants made no showing why the traditional methodology of independent or blinded studies is not appropriate to evaluate the bias of b-readers retained for CVLO clients with pending cases.

Plaintiffs offered to submit x-rays of clients with pending cases for an independent or

---

[5]Plaintiffs and Dr. Anderson do not concede amended Rule 26 as drafted allows for any exception to the protection for trial testifying expert materials.  As written, the amendments for trial protection of retained expert materials do not provide exceptions to the limits on the discoverable information such as the attorney work product "substantial hardship" (26(b)(3)((A)(ii)) or for the "exceptional circumstances" (26(b)(4)(D)) with reference to nontestifying (consulting) experts.  The absence of a proviso which creates exceptions to the retained expert protections should be read to mean none exist since other paragraphs in the same Rule 26 contain such exceptions.   Undue hardship is often defined to mean exactly what the statute says, i.e. " inability without undue hardship to obtain substantial equivalent of material by other means." *Ferko v. NASCAR*, 219 F.R.D. 396 (E.D. Tex. 2003).  Exceptional circumstances to circumvent the consulting expert privilege has also been applied as written. *Quinn Constr., Inc. v. Skansa USA Bldg, Inc.*, 263 F.R. D. 190 (E.D.Pa. 2009).  "Under FRCP 26(b)(4)(B), requesting party's burden of showing exceptional circumstances is a heavy one." *Moore U.S.A., Inc. v. Std. Register Co.*, 206 F.R.D. 72 (W.D.N.Y. 2001).

blinded b-reader analysis. (Ex. F, 12/5/2011 transcript at 68-70.) When asked by the court to consider an independent b-reader for the pending cases, defense counsel had no answer except to promise: "We'll have to consult with our clients and -- but I will note the devil is probably going to be in the details." (Id. at 79.) The "devil" of an independent reviewer remains unexplained. To the contrary, the authorities cited by the defense repeatedly utilize independent or blinded b-reader studies as the methodology for evaluating the bias of b-readers. For example the law review article written by Law Professor Lester Brickman and cited by the defense relies on seven clinical studies which involve rereading of x-rays by independent b-readers. (Ex. D, Lester Brickman, *Disparities Between Asbestosis and Silicosis Claims Generated by Litigation Screenings and Clinical Studies*, 29 Cardozo L. Rev. 102, 137-40.) One study (authored by Gitlin) cited by Professor Brickman involved scientific methodology of blinded b-readers suggested by plaintiffs as an alternative.

No peer reviewed scientific publication concludes bias can be evaluated based on "positive/negative rates." The findings in population groups with varied amounts, durations, and latency periods of exposures will inherently vary. Professor Brickman concedes: "It is not possible to state with certainty that the subjects in the clinical studies were workers with similar exposures to those that were screened for litigation purposes." (Ex. D at 119.)

II.     Absence of scientific methodology or purpose

Defendants argue and the court in the December 13, 2011, opinion cited determination of "positive/negative" rates for b-readers to justify production of the protected materials. Left unanswered are questions of how such "rates" are to be measured, relevance, and how the

documents may lead to discovery of admissible evidence[6]. Absent from the record before this

court is any scientific literature or other statement of scientific methodology which defines how

and why "positive/negative" rates of b-readers retained by CVLO are relevant. Plaintiff will not

repeat evidence already presented about the absence of any definition of what is even to be

considered a "positive" or a "negative" b-read. On the record as submitted, the use of

"positive/negative" rates as a methodology to measure bias in b-reading is junk science. The

*Daubert* standard for use of such a methodology cannot be satisfied without any acceptance of

such methodology by published scientific literature. In requiring the production of thousands of

documents outside of pending MDL 875 cases, the court has erred in putting the cart before the

horse. The scientific methodology and purpose for the study should be determined first. If such

can be established, the production can be tailored to satisfy the methodology and purpose[7].

Any purported *Daubert* challenge to the methodology plaintiff's b-readers is not a basis

for producing the historical b-reads. The court in *McElroy v. Illinois Central Railroad*

*Company*, 2011 U.S. Dist. LEXIS 103070 (S.D.Ill. 2011), held b-reads are an established

scientific methodology which is not subject to challenge under *Daubert*. Defendants themselves

---

[6]In the December 13, 2011, opinion, this court reserved ruling on "whether defendants will be able to successfully mount the same kind of challenge here [to b-reader findings]. . . ."

[7]According to basic statistics, a sample size of just 250 of Dr. Anderson's approximately 6,700 b-reads for CVLO clients yields an answer with a margin of error of just 5% and a confidence level of 90%. (Ex. G.)   Defense experts have purported to reach opinions based on substantially smaller sample sizes. Defense expert Daniel Henry opined on reliability of plaintiffs' experts based on a review of 90 b-reads by those doctors. (Ex. H at 3,  Henry June 21, 2011 affidavit.) Previously, in bankruptcy proceeding, Dr. Henry opined on "overreading" by plaintiffs' diagnosing doctors based on a review of just 67 CVLO B-reads, of which just 34 were by Dr. Henry. ("Dr. Henry's Supplement to the Henry X-ray Study," Doc. 73-2, filed 11/21/11 (Ex. I.)

concede no *Daubert* challenge has been filed and that such a challenge is only "potential, but presently inchoate." (Certain Defendant's Response to Plaintiffs' Motion to Compel and/or Verify Compliance with Rule 26(a)(1)(A)(ii).) If the ultimate use of these records is support a *Daubert* challenge or a bias challenge of CVLO retained b-reader findings, defendants should first define the scope and nature of the *Daubert* challenge before this court evaluates the records to be produced.

III.     Authority cited in December 13, 2010 opinion

The past decisions relied upon by this court in the memorandum opinion of December 13, 2011, do not support the broad scope of the production order in the December 20, 2011 order. See Order 12/13/2011 at pages 5-6. The first decision is 08-88575, Doc. No. 11. Judge Giles 2007 ruling only holds the HIPPA privilege does not protect certain documents subpoenaed from Dr. Schonfeld. The order makes no finding as to the consulting expert privilege and the testifying retained expert privilege did not exist at that time.

The second decision is 01-MD-875, Doc. No. 5815. Judge Robreno, as discussed above, only allows production of materials for clients with pending MDL 875 cases. The opinion finds a waiver of the consulting expert privilege for such clients. The 2009 opinion makes no finding about the testifying retained expert privilege which did not exist at that time.

The third decision is the order of this court entered on June 26, 2009 in 09-MC-103. Although the decision requires production of a b-reader's (Dr. Segarra) "litigation screening documents," this court did not consider any Rule 26 protections. The amendments for trial protection of retained experts had not been added to the Rule. As to the consulting expert

privilege, the court stated the order "leaves open the question of the applicability of the privilege and/or the exceptions to it." (Memorandum Op. 6/25/2009 at 7.)

IV.  Dr. Andersons notes and database - pending cases

The Rule 26 protections also apply to Dr. Anderson's notes and database for pending cases. The final b-read report, causation letters signed by Dr. Anderson, and the facts data and assumptions considered by Dr. Anderson (e.g. medical records, work histories, x-rays) are being produced without objection. As Dr. Anderson testified, his session notes are his own shorthand summaries of the final b-read reports he keeps for compliance with OSHA medical record keeping laws. (Ex. E,  Anderson dep at 195.)  No facts, data, and assumptions are in session notes which he characterized as "draft reports."  (Id. at 196.)  The database is nothing more than an indexing system for retrieving the session notes. (Id. at 43-44.)

V.     Fee and costs assessments

Consistent with Rule 26(b)(4)(E), the costs and fees of the discovery must be born by the defendants. Although noting defendants had offered to pay certain costs, the order entered on December 20, did not provide for such award. The costs of redacting to protect the confidentiality of the medical information for persons without pending cases was assessed against plaintiffs. All costs under the rules, including reasonable fees should be assessed against the defendants.

**CONCLUSION**

For the reasons above this court should reconsider the order entered on December 20, 2011. The appropriate relief is to order the independent review of the findings of a limited

10

sample of the CVLO b-reads.  This court can also fashion other alternatives to avoid production

of protected records and minimize the scope of the production.


Dated: January 10, 2012

_Robert G. McCoy_
Attorney for plaintiffs and Dr. Henry Anderson


Robert G. McCoy
Michael P. Cascino
Allen D. Vaughan
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Ave.
Chicago, IL 60607
(312) 944-0600
(312) 944-1870 (fax)
bmccoy@cvlo.com